993 F.2d 1538
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NELLO L. TEER COMPANY, Plaintiff-Appellant,
v.
ORANGE COUNTY; Shirley E. Marshall; Don Willhoit; Moses
Carey, Jr., Defendants-Appellees.
 No. 92-2240.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 30, 1993
Decided: May 26, 1993
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Durham. Norwood Carlton Tilley, Jr., District Judge. (CA-89-288-C-D)
 Argued: Harold Wayne Phears, Phears & Moldovan, Norcross, Georgia, for Appellant.
 Michael Bannon Brough, Chapel Hill, North Carolina, for Appellees.
 On Brief: George E. Butler, II, Phears & Moldovan, Norcross, Georgia; Charles Howard Nye, Nye & Phears, Durham, North Carolina, for Appellant.
 Geoffrey E. Gledhill, Hillsborough, North Carolina, G. Nicholas Herman, Chapel Hill, North Carolina, for Appellees.
 M.D.N.C.
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
 Before WILKINSON, Circuit Judge, SPROUSE, Senior Circuit Judge, and HILTON, United States District Judge for the Eastern District of Virginia, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellant Nello L. Teer Company was stymied in its efforts to develop a rock quarry in Orange County, North Carolina. Teer brought this lawsuit against the County and various individual defendants under 42 U.S.C. § 1983, alleging that the County had deprived Teer of due process and equal protection, and had taken Teer's property without compensation in violation of the Takings Clause of the Fifth Amendment. Teer's complaint also stated several pendent state law claims. The district court granted the County's motion for summary judgment on the grounds that Teer had no cognizable property interest in the permit necessary to develop a quarry. The district court dismissed some of the state claims as time-barred, and declined to exercise pendent jurisdiction over the remainder. We agree that Teer had no cognizable property interest in the permit; accordingly, we affirm the judgment of the district court dismissing Teer's federal claims. We reverse the judgment as to the state claims, however, and remand with instructions to dismiss all of the state claims without prejudice to Teer's right to return to state court.
 
 I.
 
 2
 In January, 1984, Teer purchased 146 acres of land at the intersection of New Hope Church Road and Interstate 40 in Orange County, North Carolina for $440,730. Teer leased 58 acres adjacent to the property in June, 1984, with the intention of developing a rock quarry on the two tracts. At that time, the area was zoned Residential-1 (R1) and mining was permitted in the area if a special use permit was obtained.
 
 
 3
 In the latter half of 1984, County Commissioners Shirley Marshall and Don Willhoit got wind of these acquisitions from constituents concerned by Teer's plans. Susan Smith, a staff planner for the County, was instructed to review the County's zoning provisions for mining. Smith drew up recommendations for new mining regulations, but the recommended regulations were consistent with Teer's proposed development of the quarry. Those recommendations were discussed at the Commissioner's meeting on February 4, 1985. At that meeting, Marvin Collins, the County Planning Director, proposed a moratorium on special use applications until June 1, 1985, which the commissioners unanimously adopted. In addition, the commissioners ordered that a legal advertisement be published giving notice of a public hearing on the proposed amendments.
 
 
 4
 That public hearing was held on March 12, 1985. No one from Teer attended the meeting, and there was no public comment on the proposals. Jim Sprinkle, Teer's Chief Geologist, contacted Smith later in March about setting up a meeting to discuss Teer's development plans, but Smith advised that she could not meet him before April 2. A Board of Commissioners meeting was scheduled for April 1 to discuss the proposed amendments.
 
 
 5
 At the April 1 meeting, the Board discussed Smith's proposals. Commissioner Marshall moved to change Smith's proposals to delete mining as a permitted use in all residential districts (including R-1). After some discussion, the Board unanimously adopted Marshall's motion.
 
 
 6
 Sprinkle showed up the next day for his meeting with Smith. Smith advised Sprinkle of the moratorium on applications and the change in permitted uses for residential districts, but she also told him that the Planning Department was preparing a comprehensive land use plan which would designate Teer's property as a "rural industrial activity node," thus permitting Teer to apply for a special use permit. Smith encouraged Sprinkle to be patient.
 
 
 7
 A preliminary draft of the land use plan was submitted at a public hearing on January 14, 1986, which Sprinkle attended. He requested that the Teer property be designated an industrial activity node. No one opposed the plan at that meeting. A month later, however, a meeting was held, attended by all of the commissioners, at which over 60 citizens expressed opposition to the development of a quarry on the site. Based on this public opposition, Willhoit prepared an agenda item calling for the deletion of the industrial node at the site. At a joint meeting with the planning boards from the local municipalities, Willhoit's change to the land use plan was adopted by the planning boards. The Board of Commissioners adopted the revised plan on October 13, 1986. On January 5, 1987 the Board changed the designation of the Teer property from R-1 to Rural Buffer, for which the principal use is residential, and no mining is permitted.
 
 
 8
 Teer filed an action in the Orange County Superior Court on October 21, 1987. On April 24, 1989, Teer voluntarily dismissed that action; on April 27, 1989, Teer filed this lawsuit, asserting due process, equal protection and takings claims under 42 U.S.C. § 1983, along with a number of pendent state claims. The district court granted summary judgment to the defendants on the grounds that Teer did not have a property interest in the special use permit and that several of the state claims were time-barred. The district court declined to exercise jurisdiction over the remaining state claims. Teer now appeals.
 
 II.
 
 9
 Teer attacks the district court's determination that it lacked a cognizable property interest in the special use permit. Teer argues that under North Carolina law the Board of Commissioners did not have discretion to deny its application for a special use exception. Teer contends that a special use exception must be granted if the applicant meets the objective criteria stated in the zoning ordinance. Teer also claims that it had a vested right in the existing zoning scheme, because it had made a substantial expenditure in good faith reliance on that scheme. Teer concludes that it had a "cognizable property interest, rooted in state law," in the special use permit. See Scott v. Greenville County, 716 F.2d 1409, 1418 (4th Cir. 1983).
 
 
 10
 We disagree. Under our precedents, if a local zoning authority possesses "[a]ny significant discretion" in granting a permit, there is no cognizable property interest in the issuance of that permit. Gardner v. Baltimore Mayor & City Council, 969 F.2d 63, 68 (4th Cir. 1992). We believe that the Board of Commissioners had significant discretion in deciding whether to grant special use permits.
 
 
 11
 North Carolina law authorizes the Board of Commissioners to grant special use permits "in the classes of cases or situations and in accordance with the principles, conditions, safeguards, and procedures specified [in local regulations] and may impose reasonable and appropriate conditions and safeguards upon these permits." N.C. Gen. Stat. § 153A-340. Zoning ordinances adopted by Orange County pursuant to this statutory authorization require the Board to determine that:
 
 
 12
 (1) The use will promote the public health, safety and general welfare, ...;
 
 
 13
 (2) The use will maintain or enhance the value of contiguous property ...;
 
 
 14
 (3) The use is in compliance with the general plan for the physical development of the County as embodied in these regulations or in the Comprehensive Plan, or portion thereof, adopted by the Board of County Commissioners; ...
 
 
 15
 Orange County Zoning Ordinance § 8.2.1. Although these determinations must be supported by "competent evidence appearing in the record," Woodhouse v. Board of Comm'rs, 261 S.E.2d 882, 888 (N.C. 1980), they nonetheless require the exercise of judgment and discretion. Under these standards, Teer did not have" a certainty or a very strong likelihood" that its application for a special use permit would be granted. Biser v. Town of Bel Air, Slip Op. No. 92-1675, at 7 (4th Cir. Apr. 2, 1993) (citations omitted). Consequently, Teer possessed only a "unilateral expectation" that the special use permit would issue, not the "legitimate claim of entitlement" necessary to state a cognizable property interest. Id. at 5 (quoting Board of Regents v. Roth, 408 U.S. 564, 577 (1972)).
 
 
 16
 This conclusion is also fatal to Teer's claim of a vested right to have its application for a special use permit considered under the standards existing before the Board adopted the revised land use plan. In the cases cited by Teer in support of this proposition, the land uses were explicitly permitted by existing regulations, or there were no prior zoning restrictions whatsoever. See Russell v. Guilford County, 397 S.E.2d 335 (N.C. Ct.App. 1990) (property zoned commercial when development began, ordinance subsequently changed to residential); Application of Campsites Unlimited, Inc., 215 S.E.2d 73 (N.C. 1975) (prior to events leading to lawsuit, county had not adopted any zoning scheme). In this case, Teer would still have had to convince the Board that a rock quarry was a special use compatible with the surrounding area and the Board's land use plan. As demonstrated above, the standards to be applied in making this decision conferred significant discretion on the Board of Commissioners, and even if the Board had applied the pre-existing standards, Teer had no assurance that the Board would grant its application. Teer may or may not succeed in getting its desired relief from the courts of North Carolina, but in our federal system, those courts have much greater latitude to scrutinize the actions of elected state officials, especially in an area so inherently local as zoning. See Gardner, 969 F.2d at 69. Teer simply has failed to establish the property interest necessary to sustain its claims under the federal Constitution, and this local land use dispute must be resolved in state court.
 
 III.
 
 17
 Teer also challenges the district court's dismissal of some of its pendent state claims as time-barred. The Orange County Superior Court apparently concluded otherwise, but the district court held that it was not bound by the interlocutory orders of the state court. Given the early stage in the proceedings at which the district court dismissed the federal claim, we think that the court erred in dismissing part of Teer's state law case with prejudice. The case was set to return to state court in any event, so there was no judicial economy in determining only a portion of the state claims. Moreover, the state claims raised difficult issues of state law, including the standard under North Carolina law for equitable estoppel and the determination of the filing date for Teer's complaint. In this situation, the better course is to dismiss all of the state claims, leaving them for resolution by the courts of North Carolina. See Biser, Slip Op. at 7-8 ("[T]he proper forum for local land-use disputes is state, not federal court.").
 
 IV.
 
 18
 For the above reasons, the grant of summary judgment to defendants on Teer's federal claims is affirmed. The case is remanded to the district court with instructions to dismiss Teer's state claims without prejudice.
 
 
 19
 AFFIRMED IN PART, REVERSED IN PART, AND REMANDED WITH INSTRUCTIONS